**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BAYOU WEST CONDOMINIUMS } | | |
| HOMEOWNERS ASSOCIATION INC, } | | |
| *Plaintiff* } | | |
| v. } | | CIVIL ACTION NO. H-04-3444 |
| } | | |
| ROYAL SURPLUS LINES INSURANCE } | | |
| COMPANY, } | | |
| *Defendants* } | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bayou West Condominiums Homeowners Association ("Bayou West"), the representative of the individual homeowners of the Bayou West Condominiums, is suing Defendant Royal Surplus Lines Insurance Company ("Royal Surplus") to recover for a fire that damaged its property on 25 September 2003.  Defendant claims it is not liable because Bayou West's policy had been canceled three months earlier.  Bayou West insists this cancellation was ineffective because Royal Surplus did not notify it of the cancellation in the manner proscribed by the Texas Insurance Code.  Pending before the Court is Royal Surplus's motion for summary judgment (Doc. 14).  After reviewing the facts and law, for reasons more fully explained below, the Court **ORDERS** that Defendant's motion is **GRANTED**.

**I. RELEVANT FACTS**

The facts of this case are largely uncontested. Bayou West financed its property insurance premiums through the Premium Assignment Corporation ("PAC").  The contract called for Bayou West to pay PAC on a monthly basis. As an express condition of its agreement with PAC, Bayou West executed a limited power of attorney allowing PAC to cancel Bayou West's policy with Royal Surplus if Bayou West became delinquent in its payments to PAC.

Bayou West failed to make its first scheduled payment on 5 June 2003.  On 16 June 2003, PAC sent Bayou West a notice of its intent to cancel coverage under the Royal Policy if payment was not received within ten days.  A copy of the letter was also sent to the Migura Insurance

Agency ("Migura"), Bayou West's insurance agent, which tried to contact Bayou West and left a message with its answering service. PAC did not receive Bayou West's payment, and it exercised its limited power on Bayou West's behalf to cancel the policy. On 1 July 2003, PAC sent Bayou West, Migura, and U.S. Risk Inc. (the insurance broker) a notice of cancellation. Accordingly, U.S. Risk asked Royal Surplus to delete Bayou West from the policy. On 12 August 2003, Migura recieved a letter from U.S. Risk confirming that Bayou West's coverage had been terminated.

On 10 July 2003, Bayou West contacted Migura to discuss the cancellation. Bayou West asked how much it would cost to have its coverage reinstated and promised to make the required payment. It never did so. A month later, in August 2003, Bayou West again contacted Migura to inquire about obtaining replacement coverage. Migura and Bayou West discussed the cancellation and the possibility of procuring of a replacement policy several times, but nothing was ever finalized.

On 25 September 2003, Bayou West sustained a fire in one of its buildings. On 4 December 2003, it submitted a claim under the cancelled policy. Royal Surplus denied coverage. On 24 August 2004, Bayou West filed its original petition in state court alleging (1) unfair practices by an insurance company under Article 21.21 of the Texas Insurance Code; and (2) breach of contract. On 31 August 2004, Royal removed the case. On 17 September 2004, Royal filed its answer and a counterclaim seeking a declaratory judgment that there is no coverage under the policy.

## II. LAW

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. <u>International Assoc.</u>

of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., 812 F.2d 219, 222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. Anderson, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." Id. at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. Id. at 252.

All reasonable inferences must be drawn in favor of the non-moving party. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574. 587-88 (1986), citing United States v. Diebold, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. Anderson, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id., 477 U.S. at 249-50. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A., 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. Grimes v. Texas Dept. of Mental Health and Mental Retardation, 102 F.3d 137, 139-40 (5th Cir. 1996); Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871 (1994); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. Wallace v. Texas Tech University, 80 F.3d 1042, 1046

(5th Cir. 1996), citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992); Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889 (1990). Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998), citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir.), cert. denied, 506 U.S. 832 (1992).

## III. APPLICATION OF LAW TO THE FACTS

Plaintiff claims it is entitled to recover on the policy because it never received statutory notice of cancellation from Royal Surplus. Resp. at 2 ( "This entire case rests on the issue of whether or not notice was received in the manner provided for in the insurance policy and pursuant to Tex. Ins. Code § 551.053."). The Court finds that Plaintiff did receive notice in accordance with the Insurance Code, and therefore grants Defendant's motion.

The Texas Insurance Code comprehensively regulates the business of insurance. Cancellation by a premium finance corporation is governed by Insurance Code § 651.161 (Cancellation of Insurance Contract). It provides as follows:

> (a) An insurance premium finance company may not cancel an insurance contract listed in a premium finance agreement except as provided by this section for an insured's failure to make a payment at the time and in the amount provided in the agreement.
>
> (b) ***The insurance premium finance company must mail to the insured a written notice that the company will cancel the insurance contract because of the insured's default in payment unless the default is cured at or before the time stated in the notice. The stated time may not be earlier than the 10th day after the date the notice is mailed.***
>
> (c) The insurance premium finance company must also mail a copy of the notice to the insurance agent or broker identified in the premium finance agreement.
>
> (d) After the time stated in the notice required by Subsection (b), the insurance premium finance company may cancel each applicable insurance contract by mailing a notice of cancellation to the insurer. Each insurance contract shall be canceled as if the insured had canceled the contract, except that the return of a canceled contract is not required.

-5-

> (e) The insurance premium finance company must also mail a notice of cancellation to:
>
> (1) the insured at the insured's last known address; and
>
> (2) the insurance agent or broker identified in the premium finance agreement.

(emphasis added). It is clear that PAC complied with this provision. Plaintiff, however, urges the Court to apply a different provision, Insurance Code § 551.053[1], and find that notice of cancellation was ineffective because it came from PAC rather than from Royal Surplus. The Court declines the invitation.

Chapter 551 regulates practices relating to declination, cancellation, and nonrenewal of insurance policies. It governs when an insurance company may cancel an insured's policy and specifies the appropriate manner to do so. Although § 551.053 does not explicitly limit itself to when the insurer cancels the policy, it is fair to infer that this is the case from its place in the Code and the statutory scheme as a whole. In this case, Bayou West, through PAC, canceled the policy, not Royal Surplus. Therefore § 551.053 is inapplicable.

## IV. CONCLUSION

For the aforementioned reasons, the Court **ORDERS** that Defendant Royal Surplus's motion for summary judgment (Doc. 14) is **GRANTED**.

**SIGNED** at Houston, Texas, this 13th day of January, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

[1] "No later than the 10th day before the date on which the cancellation of a liability insurance policy takes effect, an insurer must deliver or mail written notice of the cancellation to the first named insured under the policy at the address shown on the policy."